IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MANUEL HELMBRIGHT,

    Plaintiff,

v.                                            Civil Action No. 5:04CV69
                                                           (STAMP)
BONNIE DAVIS, in her private capacity,
CHIEF K. GESSLER, in his official capacity,
OFFICER WALLACE, in his official capacity and
UNKNOWN DESK OFFICER, in his official capacity,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS GESSLER, WALLACE AND
UNKNOWN DESK OFFICER'S MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT**

I. Procedural History

On June 24, 2004, the plaintiff, Manuel Helmbright ("Helmbright"), appearing pro se, filed a complaint in this Court against the defendant, Bonnie Davis ("Davis"), pursuant to 42 U.S.C. § 1983 alleging that the defendants violated his civil rights. Specifically, the third amended complaint alleges violations of substantive due process rights, procedural due process rights and equal protection violations. On August 30, 2004, the plaintiff filed an amended complaint. On November 2, 2004, the plaintiff filed a second amended complaint adding defendants, Chief K. Gessler ("Gessler"), Officer Wallace ("Wallace") and Unknown Desk Officer (collectively referred to as "defendant officers"). On June 20, 2005, plaintiff filed a third amended complaint against all defendants, Davis, Gessler, Wallace

and Unknown Desk Officer.  On July 5, 2005, defendant officers Gessler, Wallace and Unknown Desk Officer filed a motion to dismiss plaintiff's third amended complaint.[1]  On August 3, 2005, plaintiff filed a response to defendants' motion to dismiss.  On August 12, 2005, defendants Gessler, Wallace and Unknown Desk Officer filed a reply and plaintiff responded to the defendant officers' reply.[2]

For the reasons state below, this Court finds that defendants Gessler, Wallace and Unknown Desk Officer's motion to dismiss should be granted.

## II. Facts

On or about February 2004, plaintiff began residing with Ms. Davis's mentally-disabled daughter, Beth Ann Davis ("Beth Ann"). One night, in or around March 2004, Beth Ann was allegedly involuntarily committed to a mental health facility for suicidal tendencies.  During Beth Ann's involuntary confinement, Davis allegedly telephoned the plaintiff and argued with him regarding

---

[1] On July 21, 2005, plaintiff filed a motion for extension of time to file a response as to defendants' motion to dismiss.  On July 22, 2005, this Court entered an order granting plaintiff's motion for extension of time to file a response to defendants' motion to dismiss.

[2] In addition, the plaintiff has filed a motion for summary judgment and an amended motion for summary judgment against defendant Davis.  Finally, defendant Bonnie Davis's counsel, Paul C. Camilletti, filed a motion to withdraw as attorney for Bonnie Davis.  This Court defers ruling on plaintiff's motion for summary judgment against defendant Davis, plaintiff's amended motion for summary judgment against defendant Davis and Paul C. Camilletti's motion to withdraw as counsel for Bonnie Davis.

2

Beth Ann's personal life.  Plaintiff alleges that Davis told Beth Ann that the plaintiff "is an informant to the police officer who patrol[s] 13th, 14th, and 15th street, and that he ratted her friends and her out to that police officer."  (Third Am. Compl. ¶ 15.)  Several days after plaintiff's alleged call to Davis, plaintiff allegedly received two threatening calls from unknown male persons.  Plaintiff alleges that the threats arose from Davis's allegations that he is an informant.

On or about May 1, 2004, plaintiff alleges that he visited the Wheeling City Police Department to explain the threatening phone calls from Ms. Davis.  Plaintiff further alleges that he requested assistance from the police officers on duty.  Plaintiff asserts that he was met with hostility by the defendant officers.  Plaintiff alleges that Officer Wallace called the plaintiff a "crack head" and the Unknown Desk Officer referred to him as "one of those nuts he has to work his a_ _ for."  (Third Am. Compl. ¶¶ 18, 20-21, 62.)  Then plaintiff alleges that the Unknown Desk Officer told the plaintiff to leave the station or he would "come from behind the window, beat the s_ _ _ out of him, throw him in jail on false charges and make sure that he lost his VA [veteran's] pension."  (Third Am. Compl. at ¶ 22.)  Plaintiff alleges he departed from the police station after this incident. (Pl.'s Resp. Ex. BB.)  On or about May 3, 2004, plaintiff was involuntarily committed to Hillcrest Behavioral Health Services.  On June 14,

3

2004, plaintiff initiated a complaint against the Wheeling Police Department with the United States Attorney General's Office concerning the alleged incident of May 1, 2004. Plaintiff states that he received an immediate response from the United States Attorney General's Office that his letter was being forwarded to the Federal Bureau of Investigation. Plaintiff alleges that on or about July 20, 2004, he mailed a letter addressed to Chief Gessler of the Wheeling Police Department making allegations against the defendant officers concerning the alleged incident of May 1, 2004. On or about July 29, 2004, plaintiff mailed another letter by certified mail to Chief Gessler concerning the incident of May 1, 2004. (Pl.'s Resp. Ex. EE.) Plaintiff received a return receipt from the certified letter dated July 30, 2004. (Pl.'s Resp. Ex. EE.)

As stated above, plaintiff asserts that he was deprived of his substantive due process rights, procedural due process rights, and equal protection of the law by the defendant officers. Plaintiff further alleges that the City of Wheeling Police Department negligently trained the defendant police officers. Plaintiff seeks compensatory damages, special damages, punitive damages, attorney's fees and costs.

### III. Applicable Law

Defendants move this Court to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6). In assessing a motion to

dismiss for failure to state a claim under this Rule, a court must accept the factual allegations contained in the complaint as true. Advanced Health Care Servs., Inc. v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Dismissal is appropriate pursuant to Rule 12(b)(6) only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'" Id. at 143-44 (quoting Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)); see also Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

Stated another way, it has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. Id. § 1356, at 298. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a

claim under Federal Rule of Civil Procedure 8(a).  Id. § 1357, at 304, 310.

This Court also notes that a pro se plaintiff is given wide latitude in framing a complaint.  Such a pro se complaint must be liberally construed in favor of the plaintiff and held to a "less stringent standard than formal pleadings drafted by lawyers." Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519 (1972).  However, this standard does not relieve a pro se plaintiff of his obligations under the Federal Rules of Civil Procedure and, although this Court should and will liberally construe pro se pleadings, it cannot act as an advocate. See Weller v. Dep't of Soc. Serv., 901 F.2d 387 (4th Cir. 1990). However, in an abundance of caution, to the extent that plaintiff's pleadings assert arguments against a judgment in the defendants' favor, this Court will construe such documents as responsive to the defendants' motion to dismiss.

Finally, "[a] district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice.  That determination is within the district court's discretion." Carter v. Norfolk Community Hosp. Ass'n, 761 F.2d 970, 974 (4th Cir. 1985).

## IV. Discussion

The defendants, Gessler, Wallace and Unknown Desk Officer, argue that this Court should dismiss the plaintiff's complaint

6

because: (1) plaintiff has failed to identify a violation of his procedural due process rights; (2) plaintiff has failed to identify a violation of his substantive due process rights; and (3) plaintiff has failed to state a claim for a violation of his rights to equal protection.

In his response, the plaintiff states that his complaint is based upon the defendant police officers' actions and not just on their spoken words. Specifically, plaintiff argues that the police officers discriminated against him because he is mentally disabled and that they conspired with Davis to intimidate and threaten him.

A. <u>Due Process Clause</u>

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property without due process of law." (U.S. Const. amend. XIV). The plaintiff alleges substantive and due process violations under the Fourteenth Amendment. "[T]he substantive due process provision of the Fourteenth Amendment protects against egregious, arbitrary governmental conduct." <u>Young v. City of Mount Ranier</u>, 238 F.3d 567, 574 (4th 2001). Governmental conduct that "shocks the conscience" is actionable as a violation of the Fourteenth Amendment. <u>Id.</u> (citing <u>County of Sacramento v. Lewis</u>, 523 U.S. 833 (1998)). The measure of conscience-shocking depends on the circumstances of a case. <u>Young</u>, 238 F.3d at 574. "Liability for negligently inflicted harm is categorically beneath

the threshold of constitutional due process, while conduct deliberately intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Lewis, 523 U.S. at 834.

Plaintiff argues that he was deprived of his procedural and substantive due process rights "to be free from the fear of the loss of liberty by imprisonment and physical harm-restraint, the pursuit of happiness form the lost of income and home, undue mental anguish . . . public contempt and ridicule." (Third Am. Compl. ¶ 60.) Plaintiff asserts that he was interrogated in a "violent and abusive manner, during the course of which Detective Barry verbally assaulted and abused plaintiff with the intent of humiliating and embarrassing plaintiff" in the presence of other police officers; and (2) defendant officers agreed with Davis to intimidate and threaten plaintiff. Further, plaintiff argues that defendant Gessler, as police chief of the City of Wheeling, was negligent in training the defendant police officers. (Third Am. Compl. ¶ 69.)

Defendant officers argue that the plaintiff has failed to demonstrate that the defendant officers deprived him of a right, immunity, or privilege secured by the Constitution or the laws of the United States. Defendants further state that West Virginia Code § 29-12A-5(a) sets forth specific immunities designed to limit liability and provide immunity for political subdivisions. West

Virginia Code § 29-12A-5(a) states that "failure to provide, or the method of providing, police, law enforcement or fire protection" are immunities from liability. Defendants argue that they are statutorily immune from any liability for any civil tort claims.

This Court finds that plaintiff's allegations must be dismissed for several reasons: (1) Detective Barry is not a named defendant in the above-styled civil action; (2) the plaintiff has not alleged the deprivation of a constitutional right; (3) even if the plaintiff was able to allege a deprivation of a constitutional right, it does not "shock the conscience" as required under the Fourteenth Amendment; and (4) plaintiff does not have a special relationship with the defendant officers that requires the defendant officers to investigate the plaintiff's claim. This Court addresses each of these finding in turn.

1. Detective Barry

The plaintiff has not filed suit against the either the City of Wheeling or Detective Barry. Thus, the plaintiff cannot maintain an action against Detective Barry in the present suit.

2. Constitutional Violation

A court must first determine whether the plaintiff has alleged a deprivation of a constitutional right. Young v. City of Mount Ranier, 238 F.3d 567, 574 (4th Cir. 2001). The plaintiff alleges that he was humiliated when he was interrogated by Detective Barry. The plaintiff does not allege that he was physically injured by the

9

defendant officers.  See Bibbo v. Mulhern, 621 F. Supp. 1018, 1025 (D. Mass. 1985)(being "humiliated, denigrated and frightened" in absence of physical force is insufficient to implicate a substantive due process violation).  This Court finds that the plaintiff has not shown any evidence that the defendant officers were negligently trained or caused any physical harm to the plaintiff.

This Court finds that the plaintiff has not alleged a deprivation to a constitutional right to his veteran's pension benefits.  To establish a property interest protected by due process, the plaintiff must demonstrate that the Constitution, a federal statue or state statute grants him or her a protected right.  See U.S. Const. Amend. XIV; Banqura v. Hansen, ___ F.3d ___, 2006 WL 119139 (6th Cir. 2006).  In the present case, plaintiff has cited no authority, state or federal, for the proposition that the fear of losing pension benefits, without any actual deprivation, gives rise to a protected property interest. Plaintiff merely alleges that he fears the loss of his veteran's benefits.  There is no allegation that the defendant officers directly affected plaintiff's veteran's benefits.  This Court finds that plaintiff has not alleged any violations by the defendant officers that deprived him of a constitutional right.

### 3. Official Action Does Not "Shock the Conscience"

The defendant officers' conduct did not rise to the level of conscience shocking. The plaintiff alleges that Officer Gessler negligently trained the defendant officers and because of this negligent training, the plaintiff was injured. This Court does not find that defendant officers' conduct "shocks the conscience." "Liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process, while conduct deliberately intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Lewis, 523 U.S. at 834; see Estelle v. Gamble, 429 U.S. 97, 104 (prison officials violated the Fourteenth Amendment when they act deliberately indifferent to the serious medical needs of pretrial detainees). Although defendant Gessler may have trained Detective Barry and Detective Barry may have humiliated the plaintiff, their behavior does not "shock the conscience." See DeMarco v. Cuyahoga County Dept. of Human Services, 12 F. Supp. 2d 715, 722 (N.D. Ohio 1998)(the humiliation of an employee by a supervisor did not constitute behavior that "shocked the conscience" of the court). Accordingly, plaintiff does not provide any allegation in his amended complaint that would show that the defendant officers' behavior shocked the conscience.

4. <u>Special Relationship</u>

Plaintiff alleges he was fearful of Ms. Davis and the defendant officers should have investigated his complaint. The Supreme Court has established that the substantive Due Process Clause does not require a State to protect the life, liberty, and property of its citizens against invasion by private actors." <u>DeShaney v. Winnebago County Dept. of Social Servs.</u>, 489 U.S. 189, 195 (1989). The plaintiff claims he has a special relationship with the defendant officers and thus the defendant officers' breach of duty to investigate is actionable under the Due Process Clause. <u>See</u> <u>Holsten v. Massey</u>, 490 S.E.2d 864, 869 (1997). This Court disagrees.

One of the primary elements of a negligence action is the existence of a legal duty. <u>Id.</u> "Providing police protection runs ordinarily to all citizens and is to protect the safety and well-being of the public at large; therefore, absent a special duty to the plaintiff(s), no liability attaches to a . . . police department's failure to provide adequate fire or police protection." <u>Id.</u> The court in <u>Holsten</u>, set forth the following test for determining when the "special relationship" exception to the public duty doctrine gives rise to a cause of action:

> To establish that a special relationship exists between a local governmental entity and an individual, which is the basis for a special duty of care owed to such individual, the following elements must be shown: (1) an assumption by the local governmental entity, through promises or actions, of an affirmative duty to act on

12

> behalf of the party who was injured; (2) knowledge on the
> part of the local governmental entity's agents that
> inaction could lead to harm; (3) some form of direct
> contact between the local governmental entity's agents
> and the injured party; and (4) that party's justifiable
> reliance on the local governmental entity's affirmative
> undertaking.

Plaintiff has failed to show that there is a special relationship between himself and the defendant officers sufficient to trigger the public duty doctrine. Plaintiff has not shown a promise or action that would cause this Court to assume the defendant police officers took on an affirmative duty to act on behalf of the plaintiff.

This Court finds that plaintiff has failed to demonstrate that the defendant officers deprived him of any right, immunity, or privilege secured by the Fourteenth Amendment.

B. Equal Protection

Plaintiff argues that he was deprived of the equal protection of the law because: (1) he was discriminated against by the defendant officers; (2) the defendant officers agreed with Davis to intimidate and threaten the plaintiff; and (3) he was called a "crack head" and was described as "one of those nuts he [police officer] has to work his a_ _ for." (Third Am. Compl. ¶ 62.)

1. Discrimination

In his third amended complaint, plaintiff alleges that he was discriminated against because he is mentally disabled. Specifically, plaintiff alleges that the Wheeling Police Department

13

follows an unwritten or written policy, custom, or practice for the purpose of discriminating against people who suffer from disabilities. The plaintiff cites to the daily police report published by the Wheeling, West Virginia newspaper, *The Intelligencer*,³ to establish the fact that the police officers in Wheeling respond to complaints filed by others in similar situations. Plaintiff argues that the defendant officers would not respond to his complaint because he is disabled but obviously responded to non-disabled persons because he saw it in the reports in *The Intelligencer*. Plaintiff alleges that the discrimination by the defendant officers has left him unable to enjoy "the equal rights, privileges and immunities of citizens under the laws of the United States, including such rights as to be secure in his person, house, papers, and effects." (Third Am. Compl. ¶ 73.)

Defendant officers argue that the plaintiff's third amended complaint lacks sufficient allegations that the "'unprotected class' of persons without mental illness are treated any differently by these defendant officers than the plaintiff was treated." (Def. Officers' Resp. at 2.)

This Court finds that the plaintiff's allegations are insufficient to show discriminatory treatment by the defendant

---

³The plaintiff is referring to *The Intelligencer/Wheeling News-Register*, which are newspapers in Wheeling, West Virginia. The *Intelligencer* is the weekday morning and Saturday morning paper and the *Wheeling News-Register* is the weekday evening and Sunday morning paper.

14

officers. There is no indication that the defendant officers treated the plaintiff any different than non-mentally ill persons. The fact that *The Intelligencer* publishes police reports does not establish that the defendant officers discriminate or have, in the past discriminated against the mentally ill. Plaintiff has been unable to set forth any evidence of discriminatory treatment. Further, plaintiff admits that he was provided paperwork to file an internal complaint against the officers and the complaint was investigated. (Third Am. Compl. ¶ 76.) The plaintiff alleges that the police department determined that the complaint lacked support. (Third Am. Compl. ¶ 76.) Although plaintiff argues that the defendant officers would not respond to his complaints, he later admits that there was a investigation based upon one, if not all, of his complaints. (Third Am. Compl. ¶ 76.) Accordingly, plaintiff's allegations of discrimination must be dismissed.

2. Verbal Abuse and Intimidation

A verbal attack or harassment is not sufficient to amount to an assault as to be actionable under 42 U.S.C. § 1983. Jones v. Superintendent, 370 F. Supp. 488, 491 (W.D. Va. 1974); Pierce v. King, 918 F. Supp. 932 (E.D.N.C. 1996); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979).

Plaintiff alleges that the defendant officers agreed with Davis to intimidate and threaten the plaintiff. Plaintiff asserts that he was harassed by Officer Wallace when he was called a "crack

head" and by the Unknown Desk Office when he referred to the plaintiff as "one of those nuts he has to work his a_ _ for." (Third Am. Compl. ¶ 62.) After the harassment, plaintiff alleges that the Unknown Desk Officer threatened to "come from behind the window, beat the s_ _ _ out of him, throw him in jail on false charges and make sure that he lost his VA [veteran's] pension." (Third Am. Compl. at ¶ 22.)

The defendant officers assert that plaintiff has failed to state a claim under civil rights law. Specifically, the defendant officers argue that name calling is not a constitutional violation. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987)(The court stated that "even the most abusive, verbal attacks do not violate the constitution.").

This Court finds that the defendant officers' conduct of verbal attacks does not constitute a constitutional violation. Plaintiff alleges that he was verbally harassed and intimidated and the verbal attacks were with "hostility." (Third Am. Compl. ¶ 18.) No matter how violent the defendant officers' words were to the plaintiff, the defendant officers' verbal attacks were not a constitutional violation actionable under 42 U.S.C. § 1983.

Plaintiff also states that he was called a "nut" and a "crack head." (Third Am. Compl. ¶ 62.) Plaintiff then states that the defendant officers threatened to beat him and throw him in jail. No matter how threatening the defendant officers' remarks were to

16

the plaintiff, the remarks did not constitute an assault under 42 U.S.C. § 1983. See Jones, 370 F. Supp. at 491 ("Mere words, however violent, do not amount to an assault actionable under 42 U.S.C. § 1983."). The plaintiff does not allege any physical abuse by the defendant officers. Accordingly, plaintiff's claim for verbal abuse and harassment must be dismissed.

C. Punitive Damages

Punitive damages cannot be awarded against municipalities or official capacity defendants. Campbell v. Town of Southern Pines, 2005 WL 1802405 (M.D.N.C. 2005). Plaintiff requests punitive damages against the defendant officer.

This Court finds that the plaintiff cannot seek punitive damages against the defendant officers. Plaintiff's third amended complaint is against Chief K. Gessler, Officer Wallace and the Unknown Desk Officer all in their "official capacity." Plaintiff cannot seek punitive damages against the official capacity of the defendant officers. Id. Thus, plaintiff has no claim for punitive damages.

D. Supplemental Motions

On August 26, 2005, plaintiff filed a response to the defendant officers' reply. This Court will not consider any of the memoranda filed after the defendant officers' motion to dismiss was fully briefed. Local Rule of Civil Procedure 7.02 states that in motion practice there shall be (a) motions and supporting memoranda

and (b) memoranda in response to motions and reply memoranda. Once these documents are filed, the motion is fully briefed and ripe for review. Any other motions filed do not comply with Rule 7.02 regarding motion practice and are not considered in the court's analysis. Thus, this Court does not consider in its analysis plaintiff's response against defendant police officers' reply in support of their motion to dismiss.

## V. Conclusion

For the reasons stated herein, the defendants, Gessler, Wallace and the Unknown Desk Officers' motion to dismiss plaintiff's third amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is hereby GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the pro se plaintiff and to counsel of record herein.

DATED: January 20, 2006

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE