IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MANUEL HELMBRIGHT,

      Plaintiff,

v.                         Civil Action No. 5:04CV69
                                    (STAMP)

BONNIE DAVIS, in her private capacity,
CHIEF K. GESSLER, in his official capacity,
OFFICER WALLACE, in his official capacity and
UNKNOWN DESK OFFICER, in his official capacity,

      Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF MANUEL HELMBRIGHT'S
MOTION FOR SUMMARY JUDGMENT,
GRANTING SUA SPONTE SUMMARY JUDGMENT IN
FAVOR OF DEFENDANT BONNIE DAVIS AND
GRANTING DEFENDANT BONNIE DAVIS'S MOTION TO DISMISS**

I. Procedural History

On June 24, 2004, the pro se plaintiff, Manuel Helmbright ("Helmbright"), filed a complaint in this Court against the defendant, Bonnie Davis ("Davis"), pursuant to 42 U.S.C. § 1983 ("§ 1983") alleging that Davis had violated the plaintiff's civil rights. On August 30, 2004, the plaintiff filed an amended complaint. On November 2, 2004, the plaintiff filed a second amended complaint adding defendants, Chief K. Gessler ("Gessler"), Officer Wallace ("Wallace") and "Unknown Desk Officer" (collectively referred to as "defendant officers"). (Third Am. Compl. at 2.) On June 20, 2005, plaintiff filed a third amended complaint against all defendants alleging violations of substantive

due process rights, procedural due process rights and equal protection violations.[1]

In December 2005, Helmbright filed a motion for summary judgment and a corrected motion for summary judgment, to which Davis responded. In February 2006, Davis filed a motion to dismiss plaintiff's third amended complaint, to which plaintiff responded and Davis replied. These motions are now fully briefed and ripe for review. After reviewing the parties' memoranda and the applicable law, this Court grants defendant Bonnie Davis's motion to dismiss and denies plaintiff Manuel Helmbright's motion for summary judgment but grants <u>sua sponte</u> summary judgment in the favor of defendant Bonnie Davis.

## II. <u>Facts</u>

Around February 2004, plaintiff began residing with Ms. Davis's mentally-disabled daughter, Beth Ann Davis ("Beth Ann"). One night, in or around March 2004, Beth Ann was allegedly involuntarily committed to a mental health facility because of suicidal tendencies. During Beth Ann's involuntary confinement, Davis allegedly telephoned and argued with him regarding Beth Ann's personal life. Plaintiff alleges that Davis told Beth Ann that the plaintiff "is an informant to the police officer who patrol[s] 13th, 14th, and 15th street, and that he ratted her friends and her

---

[1]On January 20, 2006, this Court dismissed the defendants, Chief K. Gessler, Officer Wallace and "Unknown Desk Officer."

out to that police officer." (Third Am. Compl. ¶ 15.) Several days after plaintiff's alleged call to Davis, plaintiff allegedly received two threatening calls from unknown male persons. Plaintiff alleges that the threats arose from Davis's allegations that he is an informant.

Plaintiff alleges that on or about May 1, 2004, he visited the Wheeling City Police Department to explain the threatening phone calls from Davis. Plaintiff further alleges that he requested assistance from the police officers on duty. Plaintiff asserts that he was met with hostility by the defendant officers. Plaintiff alleges that Officer Wallace called the plaintiff a "crack head" and the "Unknown Desk Officer" referred to him as "one of those nuts he has to work his a_ _ for." (Third Am. Compl. ¶¶ 18, 20-21, 62.) Then plaintiff alleges that the "Unknown Desk Officer" told the plaintiff to leave the station or he would "come from behind the window, beat the s_ _ _ out of him, throw him in jail on false charges and make sure that he lost his VA [veteran's] pension." (Third Am. Compl. at ¶ 22.) Plaintiff alleges he left the police station after this incident. (Pl.'s Resp. Ex. BB.) On or about May 3, 2004, plaintiff was involuntarily committed to Hillcrest Behavioral Health Services. On June 14, 2004, plaintiff initiated a complaint against the Wheeling Police Department with the United States Attorney General's Office concerning the alleged incident of May 1, 2004. Plaintiff states that he received an

immediate response from the United States Attorney General's Office that his letter was being forwarded to the Federal Bureau of Investigation. Plaintiff alleges that on or about July 20, 2004, he mailed a letter addressed to Chief Gessler of the Wheeling Police Department making allegations against the defendant officers concerning the alleged incident of May 1, 2004. On or about July 29, 2004, plaintiff mailed another letter by certified mail to Chief Gessler concerning the incident of May 1, 2004. (Pl.'s Resp. Ex. EE.) Plaintiff received a return receipt from the certified letter dated July 30, 2004. (Pl.'s Resp. Ex. EE.)

As stated above, plaintiff asserts that he was deprived of his substantive due process rights, procedural due process rights, and equal protection of the law under the Fourteenth Amendment. Plaintiff seeks compensatory damages, special damages, punitive damages, attorney's fees and costs.

## III. Applicable Law

### A. Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of

material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23
(1986).  "The burden then shifts to the nonmoving party to come
forward with facts sufficient to create a triable issue of fact."
Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir.
1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  However, as the
United States Supreme Court noted in Anderson, "Rule 56(e) itself
provides that a party opposing a properly supported motion for
summary judgment may not rest upon the mere allegations or denials
of his pleading, but . . . must set forth specific facts showing
that there is a genuine issue for trial."  Id. at 256.  "The
inquiry performed is the threshold inquiry of determining whether
there is the need for a trial -- whether, in other words, there are
any genuine factual issues that properly can be resolved only by a
finder of fact because they may reasonably be resolved in favor of
either party."  Id. at 250; see also Charbonnages de France v.
Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should
be granted only in those cases where it is perfectly clear that no
issue of fact is involved and inquiry into the facts is not
desirable to clarify the application of the law." (citing Stevens
v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

   In Celotex, the Court stated that "the plain language of Rule
56(c) mandates the entry of summary judgment, after adequate time
for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. <u>See</u> <u>Oksanen v. Page Mem'l Hosp.</u>, 912 F.2d 73, 78 (4th Cir. 1990), <u>cert. denied</u>, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

A district court may grant summary judgment sua sponte where the losing party has had "a full and fair opportunity" to ventilate the issues involved in the motion. <u>Portsmouth Square, Inc. v. Shareholders Protective Comm.</u>, 770 F.2d 866, 869 (9th Cir. 1985). By fully briefing his motion for summary judgment, the plaintiff has had a full and fair opportunity to develop and present facts and legal argument in support of its position with regard to coverage. <u>See</u> <u>Victus, Ltd. v. Collezione Europa U.S.A. Inc.</u>, 26 F. Supp. 2d 772, 775 (M.D.N.C. 1998).

B.   <u>Motion to Dismiss</u>

Defendant Davis moves this Court to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6). In assessing a motion to dismiss for failure to state a claim under this Rule, a court must accept the factual allegations contained in the complaint as

true.  <u>Advanced Health Care Servs., Inc. v. Radford Community Hosp.</u>, 910 F.2d 139, 143 (4th Cir. 1990).  Dismissal is appropriate pursuant to Rule 12(b)(6) only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'"  <u>Id.</u> at 143-44 (quoting <u>Johnson v. Mueller</u>, 415 F.2d 354, 355 (4th Cir. 1969)); <u>see also</u> <u>Rogers v. Jefferson-Pilot Life Ins. Co.</u>, 883 F.2d 324, 325 (4th Cir. 1989).

Stated another way, it has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case.  5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356, at 294 (2d ed. 1990).  The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact.  <u>Id.</u> § 1356, at 298.  For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a).  <u>Id.</u> § 1357, at 304, 310.

This Court also notes that a _pro se_ plaintiff is given wide latitude in framing a complaint. Such a _pro se_ complaint must be liberally construed in favor of the plaintiff and held to a "less stringent standard than formal pleadings drafted by lawyers." _Hughes v. Rowe_, 449 U.S. 5, 9 (1980); _Haines v. Kerner_, 404 U.S. 519 (1972). However, this standard does not relieve a _pro se_ plaintiff of his obligations under the Federal Rules of Civil Procedure and, although this Court should and will liberally construe _pro se_ pleadings, it cannot act as an advocate. See _Weller v. Dep't of Soc. Serv._, 901 F.2d 387 (4th Cir. 1990). In an abundance of caution, to the extent that plaintiff's pleadings assert arguments against a judgment in the defendants' favor, this Court will construe such pleadings as responsive to the defendants' motion to dismiss.

Finally, "[a] district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice. That determination is within the district court's discretion." _Carter v. Norfolk Community Hosp. Ass'n_, 761 F.2d 970, 974 (4th Cir. 1985).

## IV.  Discussion

### A.  Summary Judgment

In his motion for summary judgment, the plaintiff argues that Davis acted under color of law and that all injuries, damages, losses or alleged suffering by him were caused and contributed to

by Davis. Specifically, the plaintiff asserts that Davis conspired with the defendant officers to single him out for "harsh and arbitrary confrontation." (Pl.'s Resp. at 2.) In response, Davis asserts that she did not make false and defamatory statements about the plaintiff and did not conspire with the defendant officers against him.

In order for the plaintiff to establish a civil conspiracy under 42 U.S.C. § 1983, the plaintiff must prove that Davis, a private actor, acted jointly in concert with the defendant officers and that some overt act was done in furtherance of the conspiracy which resulted in the plaintiff's deprivation of a constitutional right. Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416 (4th Cir. 1996). Private entities and individuals whose involvement with the state and local government justifies treating them as state actors under the Fourteenth Amendment are subject to § 1983 liability. See Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982). The court in Lugar held that conduct which constitutes state action under the Fourteenth Amendment also constitutes action under color of state law pursuant to § 1983. Id.

    1.   State Action

This Court finds that Davis was not a state actor, acting in concert with the defendant officers to deprive the plaintiff of his constitutional rights.

Whether a private party's conduct constitutes state action is "one of the more slippery and troublesome areas of civil rights litigation." <u>International Soc'y for Krishna Consciousness v. Air Canada</u>, 727 F.2d 253, 255 (2d Cir. 1984)(quoting <u>Graseck v. Mauceri</u>, 582 F.2d 203, 204 (2d Cir. 1978), <u>cert. denied</u>, 439 U.S. 1129 (1979)). The Supreme Court in <u>American Manufacturers Mutual Insurance Company v. Sullivan</u>, stressed that state action is a determination of whether a party's specific conduct constituted state action, not whether a party is a state actor. Moreover, as stated in <u>Wagenmann v. Adams</u>, 829 F.2d 196 (1st Cir. 1987), state action exists when circumstantial evidence shows that a private citizen "possessed and exerted influence over the . . . police and conspired with them . . . ."

If Davis is liable for the plaintiff's deprivation of liberty, fear from imprisonment and physical harm and fear from the loss of income and his home, Davis's guilt must rest on evidence that she conspired with the police or acted in a way purposefully calculated to bring about the conduct that deprived the plaintiff of his constitutional rights.

To satisfy his burden of proof, the plaintiff asserts that Davis's statements to Dr. Michael Marshall and the defendant officers proves that the defendant officers agreed with Davis to intimidate and threaten the plaintiff with physical harm, false imprisonment and loss of income. (Pl.'s Mot. Summ. J. at 7-8.)

Further, the plaintiff argues that Davis' conduct caused the "police officers to carryout a written or unwritten policy, custom or practice which is unfavorable to those with known disabilities." (Third Am. Compl. ¶ 46.) Davis denies these allegations. This Court finds that plaintiff's allegations and supporting evidence do not give rise to a finding that defendant is a state actor.

### 2. Statement to Dr. Michael Marshall

The plaintiff asserts that Davis had a conversation with the plaintiff's psychologist, Dr. Michael Marshall ("Dr. Marshall"). (Pl.'s Mot. Summ. J. Ex. at 20.) The plaintiff asserts that there is evidence that the telephone conversation took place. Attached to plaintiff's motion for summary judgment is a letter from Dr. Marshall, which states that "I received a telephone call from Ms. Davis in which we discussed Beth Ann's drug addiction and recovery options." Id.

To be a state actor, a private person must jointly engage with state officials in the challenged action. Both Davis and Dr. Marshall are private actors. Thus, Davis is not a state actor liable under § 1983. It must also be noted that plaintiff has not provided any evidence that the telephone conversation is relevant to his § 1983 allegations.

### 3. Defendant Officers

The plaintiff asserts that Davis's statements in her pleadings suggest "reasoned, intended, or purposeful action, such as,

11

contacting the police." (Pl.'s Mot. Summ. J. at 7.) Specifically, the plaintiff asserts that Davis harbored a motive against him based upon Davis's statement that she "constantly make[s] every attempt to overcome Helmbright's influence in order to provide medical attention to her [Beth Ann]." (Davis Mot. Dismiss at 3.) Plaintiff further asserts that Davis informed the police that plaintiff was protecting Beth Ann, Davis's daughter, that the plaintiff is a crack cocaine dealer and distributor and that the plaintiff stored crack cocaine in his home. Based upon these statements, the plaintiff alleges that Davis conspired with the defendant officers to violate his equal protection and due process rights.

In response, Davis states that the plaintiff's allegations are false. Davis asserts that she did visit the Wheeling Police Department on one occasion to ask for help. Specifically, Davis requested that the police help her remove "the vulgar and pornographic answering message Helmbright had placed on his telephone answering machine."[2] (Pl.'s Resp. to Mot. Summ. J. at 2.)

This Court disagrees with the inferences that the plaintiff asks it to draw. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)("Rule 56(e) itself provides that a party opposing

_____

[2]Davis asserts that the message contained "Davis's name and telephone number 'for a good time, etcetera' (graphically expressed)." (Pl.'s Resp. Mot. Summ. J. at 2.)

a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.")  The plaintiff has a weighty burden to establish a civil rights conspiracy.  The plaintiff need not "produce direct evidence of a meeting of the minds," but he must provide circumstantial evidence that each person in the alleged conspiracy shared the same objective.  <u>Hinkle v. City of Clarksburg, W. Va.</u>, 81 F.3d 416, 421 (4th Cir. 1996).  The plaintiff's evidence fails to meet this burden.  The plaintiff has not produced any evidence, either direct or circumstantial, that the defendants acted in concert to deprive the plaintiff of his liberties to be free from fear of imprisonment and physical harm and from the loss of income and his home.  The plaintiff's evidence does not disclose any communication between Davis and the defendant officers or others that might give rise to an inference of an agreement to commit any acts, wrongful or otherwise.  Further, the plaintiff's evidence does not give rise to an inference that each alleged conspirator shared the same objective.  This Court finds that the plaintiff's evidence amounts to nothing more than speculation and conjecture.  It does not reveal that any alleged member of the conspiracy possessed an intent to commit an unlawful act.

Not only is the plaintiff's evidence mere speculation, but the acts alleged are capable of an innocent interpretation.  The

13

plaintiff asserts that Davis made certain statements to the police, specifically that he was protecting Beth Ann, Davis's daughter, that the plaintiff is a crack cocaine dealer and distributor and that the plaintiff stored crack cocaine in his home, which proves that Davis "harbored a motive against plaintiff." (Pl.'s Mot. Summ. J. at 7.) Davis denies these statements and asserts that on one occasion she did call the Wheeling Police Department regarding the plaintiff's answering machine message because she felt it was "pornographic" and "vulgar" since it provided her daughter's name and telephone number to call "for a good time." (Davis Resp. to Mot. Summ. J. at 2.) This Court finds that Davis called the Wheeling Police Department to request police assistance. See Wagenmann, 829 F.2d at 210 ("[m]erely initiating a good-faith request for police protection would not attach liability for the subsequent unconstitutional conduct of arresting officers.").

In Wagenmann, Anderson, a private actor, was held to be liable under the civil rights statute for a warrantless arrest of the plaintiff based upon circumstantial evidence that supported the finding that Anderson possessed and exerted influence over the police and conspired with them to have the plaintiff arrested. Id. at 197. In that civil action, Anderson was an acquaintance with the deputy chief, Egan. Id. at 210. Anderson was able to bypass regular police procedures of investigating reports before making an arrest. Id. Anderson was also able to telephone Egan at his

unlisted telephone number when Egan was off duty. <u>Id.</u> Non-acquaintances could not reach Egan when he was off-duty. <u>Id.</u> Moreover, the plaintiff was arrested and provided a court-appointed attorney who stated that "he was a friend and fellow parishioner of Anderson's." <u>Id.</u> at 204. Finally, the plaintiff was placed in a ward for mentally disturbed persons even though Dr. Myerson, a psychiatrist who examined the plaintiff, stated that the plaintiff showed "no signs of mental illness whatsoever." <u>Id.</u> at 204-5.

The present civil action is distinguishable from <u>Wagenmann</u> because there is no circumstantial evidence to support a finding that Davis possessed or exerted influence over the Wheeling Police Department. Davis went to the police station on one occasion to report a complaint. There is no evidence that Davis had a social relationship with any of the defendant officers and neither the defendant officers nor Davis indicated that they had such a relationship. Moreover, the plaintiff has provided no evidence that Davis coerced the defendant officers to disregard police procedures and perform unlawful acts against the plaintiff. Not only is there insufficient evidence that Davis conspired with the defendant officers but the plaintiff was never arrested or deprived of any of his property by Davis or the defendant officers. Accordingly, this Court finds that plaintiff failed to establish that Davis conspired under § 1983 with the defendant officers to deny the plaintiff due process and/or equal protection of the law.

B.   <u>Motion to Dismiss</u>

In her motion to dismiss plaintiff's third amended complaint, Davis asserts that the plaintiff has failed to allege any violation or tortious activity which violates the plaintiff's constitutionally protected rights.   In response, the plaintiff asserts that Davis is responsible for the police harassment because she conspired with the defendant officers to deprive plaintiff of his constitutional rights.   In reply, Davis asserts that plaintiff's alleged conspiracy was not unlawful and did not harm the plaintiff.

As stated above, this Court finds that the plaintiff, in his motion for summary judgment, fails to provide sufficient proof of a "conspiracy" among Davis and the defendant officers.   However, even if Davis was a state actor, this Court finds that the plaintiff has not suffered a constitutional violation of his substantive due process rights, procedural due process rights and/or equal protection of the law.   See Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416 (4th Cir. 1996)(under § 1983 the plaintiff must prove that Davis was a state actor involved in a conspiracy that deprived the plaintiff of a constitutional right).

1.   Substantive and Procedural Due Process

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property without due process of law." (U.S. Const.

amend. XIV).  The plaintiff alleges substantive and procedural due process violations under the Fourteenth Amendment.  "[T]he substantive due process provision of the Fourteenth Amendment protects against egregious, arbitrary governmental conduct." Young v. City of Mount Ranier, 238 F.3d 567, 574 (4th Cir. 2001). Governmental conduct that "shocks the conscience" is actionable as a violation of the Fourteenth Amendment.  Id. (citing County of Sacramento v. Lewis, 523 U.S. 833 (1998)).  The measure of conscience-shocking depends on the circumstances of a case.  Young, 238 F.3d at 574.  "Liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process, while conduct deliberately intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Lewis, 523 U.S. at 834.

Plaintiff argues that he was deprived of his procedural and substantive due process rights "to be free from the fear of the loss of liberty by imprisonment and physical harm-restraint, the pursuit of happiness form the lost of income and home, undue mental anguish . . . public contempt and ridicule."  (Third Am. Compl. ¶ 60.)  Plaintiff asserts that the defendant officers agreed with Davis to intimidate and threaten the plaintiff.  (Third Am. Compl. ¶ 69.)

17

Davis argues that the plaintiff has failed to demonstrate that Davis coerced the defendant officers to deprive the plaintiff of a right, immunity, or privilege secured by the Constitution or the laws of the United States.

This Court finds that the plaintiff's allegations must be dismissed because: (1) the plaintiff has not alleged the deprivation of a constitutional right; and (2) even if the plaintiff was able to allege a deprivation of a constitutional right, Davis's actions do not "shock the conscience" as required under the Fourteenth Amendment.

### a. Deprivation of a Constitutional Right

A court must determine whether the plaintiff has alleged a deprivation of a constitutional right. <u>Young v. City of Mount Ranier</u>, 238 F.3d 567, 574 (4th Cir. 2001). This Court finds that the plaintiff has not alleged any facts sufficient to rise to the level of a deprivation of a constitutional right. The plaintiff does not allege that he was physically injured by Davis and there is no evidence that Davis coerced the defendant officers to take physical action against the plaintiff. <u>See</u> <u>Bibbo v. Mulhern</u>, 621 F. Supp. 1018, 1025 (D. Mass. 1985)(being "humiliated, denigrated and frightened" in absence of physical force is insufficient to implicate a substantive due process violation). Further, this Court finds that the plaintiff has not provided any evidence that

Davis conspired with the defendant officers to negligently train or harm the plaintiff.

This Court also finds that the plaintiff has not alleged a deprivation of a constitutional right to his veteran's pension benefits. To establish a property interest protected by the due process clause, the plaintiff must demonstrate that the Constitution, a federal statute or state statute grants him or her a protected right. <u>See</u> U.S. Const. Amend. XIV; <u>Banqura v. Hansen</u>, 434 F.3d 487 (6th Cir. 2006). In the present case, plaintiff has cited no authority, state or federal, for the proposition that the fear of losing his pension benefits, without any actual deprivation, gives rise to a protected property interest. Plaintiff merely alleges that he fears the loss of his veteran's benefits and this alone is not an allegation of a constitutional violation. There is no allegation that Davis or the defendant officers, through Davis's coercion, directly affected plaintiff's veteran's benefits. Moreover, plaintiff provides no reason for this Court to believe that Davis coerced the defendant officers to affect the plaintiff's veteran's benefits. Accordingly, this Court finds that plaintiff has not alleged any violations by Davis that deprived him of a constitutional right.

    b.    <u>Official Action Does Not "Shock the Conscience"</u>

The substantive due process component of the Fourteenth Amendment protects against arbitrary conduct. <u>Lewis</u>, 523 U.S. 833.

To establish a substantive due process violation, the arbitrary action must be that which "shocks the conscience." Id. at 834. "Liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process, while conduct deliberately intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. See Estelle v. Gamble, 429 U.S. 97, 104 (prison officials violated the Fourteenth Amendment when they act deliberately indifferent to the serious medical needs of pretrial detainees).

This Court finds that the plaintiff's allegations are insufficient to state a substantive due process violation. Specifically, Davis's conduct does not rise to the level of conscience shocking.

The plaintiff alleges that Davis conspired with Officer Gessler to negligently train the defendant officers and because of this negligent training the plaintiff was injured. Although Gessler may have trained the defendant officers, who in turn may have humiliated the plaintiff, their behavior also does not "shock the conscience." See DeMarco v. Cuyahoga County Dept. of Human Services, 12 F. Supp. 2d 715, 722 (N.D. Ohio 1998)(the humiliation of an employee by a supervisor did not constitute behavior that "shocked the conscience" of the court). Thus, Davis cannot be

liable under § 1983 for coercing the defendant officers to violate the plaintiff's substantive and procedural due process rights.

2. <u>Equal Protection</u>

Plaintiff argues that he was deprived of the equal protection of the law because: (1) the defendant officers and Davis conspired to discriminated against him; and (2) the defendant officers agreed with Davis to intimidate and threaten him. (Third Am. Compl. ¶ 62.)

a. <u>Discrimination</u>

In his third amended complaint, the plaintiff alleges that he was discriminated against because he is mentally disabled. Specifically, plaintiff alleges that Davis exerted influence over the Wheeling Police Department to follow an unwritten or written policy, custom, or practice for the purpose of discriminating against people who suffer from disabilities. The plaintiff cites the daily police report published by the Wheeling, West Virginia newspaper, *The Intelligencer*,[3] to establish the fact that the police officers in Wheeling respond to complaints filed by other non-disabled persons in similar situations. Plaintiff asserts that the defendant officers would not respond to his complaint because he is disabled but obviously responded to non-disabled persons

---

[3]The plaintiff is referring to *The Intelligencer/Wheeling News-Register*, which are newspapers in Wheeling, West Virginia. The *Intelligencer* is the weekday morning and Saturday morning paper and the *Wheeling News-Register* is the weekday evening and Sunday morning paper.

because he saw it in the reports in *The Intelligencer*. Plaintiff alleges that the discrimination by the defendant officers has left him unable to enjoy "the equal rights, privileges and immunities of citizens under the laws of the United States, including such rights as to be secure in his person, house, papers, and effects." (Third Am. Compl. ¶ 73.)

This Court finds that the plaintiff's allegations are insufficient to show that Davis coerced the defendant officers to engage in discriminatory treatment of the plaintiff. The fact that *The Intelligencer* publishes police reports of other incidents does not establish that the defendant officers discriminate or have, in the past discriminated against the mentally ill. Plaintiff has been unable to set forth any evidence of discriminatory treatment.

The plaintiff has failed to provide any connection between Davis and the plaintiff's alleged discriminatory treatment other than asserting that Davis was in agreement with the defendant officers to discriminate against plaintiff. Plaintiff has not provided evidence of a formal adopted policy that allows or promotes discriminatory treatment. Nor has plaintiff provided any information that the alleged discriminatory practices of the defendant officers are "so permanent and well settled as to constitute a 'custom or usage' with the force of law." <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 691 (1978). Accordingly the plaintiff has provided insufficient evidence to

establish that Davis coerced the defendant officers to discriminate against him.

  b.  <u>Verbal Abuse and Intimidation</u>

A verbal attack or harassment is not sufficient to amount to an assault as to be actionable under 42 U.S.C. § 1983.  <u>Jones v. Superintendent</u>, 370 F. Supp. 488, 491 (W.D. Va. 1974); <u>Pierce v. King</u>, 918 F. Supp. 932 (E.D.N.C. 1996); <u>Collins v. Cundy</u>, 603 F.2d 825, 827 (10th Cir. 1979).

Plaintiff alleges that the defendant officers agreed with Davis to intimidate and threaten the plaintiff.  Plaintiff asserts that he was harassed by Officer Wallace when he was called a "crack head" and by the "Unknown Desk Officer" when he referred to the plaintiff as "one of those nuts he has to work his a_ _ for." (Third Am. Compl. ¶ 62.)  After the harassment, plaintiff alleges that the "Unknown Desk Officer" threatened to "come from behind the window, beat the s_ _ _ out of him, throw him in jail on false charges and make sure that he lost his VA [veteran's] pension." (Third Am. Compl. at ¶ 22.)  This Court finds that Davis did not coerce the defendant officers to harass and threaten the plaintiff.

Plaintiff also states that he was called a "nut" and a "crack head." (Third Am. Compl. ¶ 62.)  Plaintiff then states that the defendant officers threatened to beat him and throw him in jail. This Court finds the officer's conduct of verbal attacks do not constitute a constitutional violation.  Plaintiff alleges that he

was verbally harassed and intimidated and that the verbal attacks were with "hostility." (Third Am. Compl. ¶ 18.) No matter how threatening the defendant officers' remarks were to the plaintiff, these remarks do not constitute an assault under § 1983. See Jones, 370 F. Supp. at 491 ("Mere words, however violent, do not amount to an assault actionable under 42 U.S.C. § 1983."). Moreover, the plaintiff does not allege any physical abuse by Davis or that Davis coerced the defendant officers to physically abuse the plaintiff.

The plaintiff does not provide any evidence that Davis coerced the defendant officers to threaten or harass the plaintiff. The plaintiff met with the police on one occasion to file a complaint. The plaintiff has not alleged or provided any evidence that the defendant officers and Davis had or at this time have a social relationship. Davis was not present during the alleged harassment. Moreover, the plaintiff has not provided any evidence that the defendants had a conspiratorial objective to harass the plaintiff. Accordingly, this Court finds that Davis is not liable under § 1983 for the plaintiff's allegations of verbal abuse and harassment by the defendant officers.

C.    Summary Judgment Sua Sponte

"Summary judgment whether sua sponte or on a motion from a party, is appropriate only if there is no genuine issue as to any material fact." Victus, Ltd. v. Collezione Europa U.S.A., Inc., 26

F. Supp. 2d 772, 777 (M.D.N.C. 1998). This Court grants Davis's motion to dismiss and also grants sua sponte summary judgment in favor of Davis. Not only has the plaintiff failed to plead factual allegations that rise to the level of a constitutional violation but the plaintiff has failed to provide any evidence in his motion for summary judgment that rises to the level of a constitutional violation.

The parties fully briefed the plaintiff's motion for summary judgment, and thus, the parties were able to fully develop and present the record. Id. at 775 (by fully briefing his motion for summary judgment, the plaintiff has had a full and fair opportunity to develop and present facts and legal argument in support of its position with regard to coverage). Since the plaintiff has failed to provide any evidence of state action by Davis or a constitutional deprivation of the plaintiff's substantive and due process rights and/or equal protection under the law, Davis cannot be liable to the plaintiff under § 1983. Accordingly, this Court must grant sua sponte summary judgment in favor of Davis.

V. Conclusion

For the reasons stated herein, the defendant Bonnie Davis's motion to dismiss plaintiff's third amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is hereby GRANTED. Further, the plaintiff Manuel Helmbright's motion for summary judgment is hereby DENIED and summary judgment in favor of

defendant Bonnie Davis is hereby GRANTED <u>sua sponte</u> by this Court. It is ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

Plaintiff, Manuel Helmbright, who is proceeding <u>pro se</u>, is advised that he has the right to appeal the judgment of this Court to the Fourth Circuit Court of Appeals. Notice of such appeal must be filed with the Clerk of this Court within thirty days after the date of the entry of this order.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the <u>pro se</u> plaintiff and to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    May 12, 2006


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE